# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Nathan Chick and Sarah Lightbody, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No.: 0:18-cv-00814-JMC |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| James M. Johnson, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court for review of Defendant James M. Johnson's ("Defendant") Motion to Change Venue filed on May 25, 2018. (ECF No. 10.) Plaintiffs Nathan Chick and Sarah Lightbody (collectively "Plaintiffs") vigorously opposed Defendant's Motion on June 11, 2018. (ECF No. 12.) Defendant replied to Plaintiffs' opposition on June 12, 2018. (ECF No. 13.) For the reasons stated herein, the court **GRANTS** Defendant's Motion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs filed their Complaint against Defendant on March, 23, 2018. (ECF No. 1.) In their Complaint, Plaintiffs allege that Defendant was negligent when he operated a motorboat at a high rate of speed and caused them to collide with him on Lake Wylie, a body of water that is in North and South Carolina (ECF No. 12 at 3). (*Id.* at 2-3.) Defendant was personally served, in South Carolina, with the Complaint on April 16, 2018. (ECF No. 5.) On May 25, 2018, Defendant filed his Motion to Change Venue. (ECF No. 10.) In his Motion, Defendant moved to change venue because "the incident occurred in North Carolina, the case was investigated by [the] state of North Carolina, the treating physicians are in North Carolina, and the majority of the witnesses are residents of North Carolina." (*Id.* at 1.)

1

On June 11, 2018, Plaintiffs filed their Response in Opposition to Defendant's Motion to Change Venue. (ECF No. 12.) Plaintiffs argue that venue is proper in the District of South Carolina because in admiralty cases, "venue is proper in any district where process can be made upon the defendants." (*Id.* at 2 (quoting *Campbell v. Johnson & Towers, Inc.*, 123 F. Supp. 2d 329, 338 (D.S.C.)).) In other words, Plaintiffs submit that "the rules of venue [are] more liberal in admiralty actions." (*Id.*) Additionally, Plaintiffs forcefully maintain that Defendant's Motion fails to establish that a transfer of venue is proper, and he has failed to carry his burden. (*Id.* at 3-4.) Plaintiffs request that the court deny Defendant's Motion.

On May 25, 2018, Defendant, replying to Plaintiffs, filed his Memorandum in Support of Defendant's Motion to Change Venue. (ECF No. 13.) Defendant argues that his Motion should be granted because the accident was investigated by the North Carolina Wildlife Resources Commission and the North Carolina Police Department, material witnesses are outside of South Carolina, Plaintiffs are residents of Charlotte, North Carolina, and North Carolina courts are better suited to apply the substantive law of North Carolina. (*Id.* at 1-3.) Moreover, Defendant alleges that the actual accident took place in North Carolina, not South Carolina. (*Id.* at 3.) Defendant asks the court to grant his Motion. (*Id.* at 3-4.)

## II. JURISDICTION

### A. Personal Jurisdiction

A federal court is required to have personal jurisdiction under the Due Process Clause. *See Foster v. Arletty 3 Sarl*, 278 F.3d 409, 413 (4th Cir. 2002) (citing *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). Generally, unless personal jurisdiction is challenged in a pre-answer motion or in the answer itself, it is deemed waived. Fed. R. Civ. P. 12(h). *See also Bethlehem Steel Corp. v. Devers*, 389 F.2d 44, 45-46 (4th Cir. 1968)

("Since the appearance must be deemed authorized and since no attack on personal jurisdiction was made in a pre-answer motion or in the answer itself, the defense of lack of jurisdiction over the person is waived." (citation omitted)). When a defendant fails to raise the issue of personal jurisdiction, the defendant consents to the court's exercise of personal jurisdiction. *See Foster*, 278 F.3d at 413.

In the instant case, Defendant filed his Answer on May 25, 2018. (ECF No. 10.) In his Answer, Defendant failed to challenge the court's personal jurisdiction over him. (*See id.*) Therefore, the court may exercise personal jurisdiction over Defendant because he has waived this specific defense. Fed. R. Civ. P. 12(h). Moreover, even if a challenge existed, the court would likely possess personal jurisdiction over Defendant because he is a resident of South Carolina (ECF No. 13-1 at 3) and was properly served with the Complaint in South Carolina (ECF No. 5). *See* Fed. R. Civ. P. 4(e). *See also* 4A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1069.5 (4th ed. 2018) ("[T]he paradigm forum for an individual is his or her state of domicile. . . . An individual can be subject to jurisdiction when he or she is served with process while physically present in the forum state.").

**B. Subject-Matter Jurisdiction**

Subject-matter jurisdiction "involves a court's power to hear a case" and may never be "forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Under 28 U.S.C. § 1333(1), district courts have original jurisdiction for "[a]ny civil case of admiralty or maritime jurisdiction . . . ." Generally, in order for a court to properly invoke § 1333(1) for a tort claim, a plaintiff "must satisfy conditions both of location and of connection with maritime activity." *Gossett v. McMurtry*, 764 F. Supp. 2d 782, 784 (D.S.C. 2010) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)). To satisfy the location test, a court

3

must determine, "whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart*, 513 U.S. at 534. The connection test requires the court to assess whether the incident had a "potentially disruptive impact on maritime commerce" and a "substantial relationship to traditional maritime activity." *Gossett*, 764 F. Supp. 2d at 784 (quoting *Jerome B. Grubart*, 513 U.S. at 534). Admiralty jurisdiction generally extends to injuries involving recreational vessels. *See also Oliver by Oliver v. Hardesty*, 745 F.2d 317, 319-20 (4th Cir. 1984) (holding that a district court possessed admiralty jurisdiction when a defendant allegedly engaged in a negligent operation). *See also Ray v. Lesniak*, 294 F. Supp. 3d 466, 481 (D.S.C. 2018) ("Admiralty jurisdiction extends to injuries involving recreational vessels such as the Celadon."); *Mahony v. Lowcountry Boatworks, LLC*, 465 F. Supp. 2d 547, 550-54 (D.S.C. 2006) (holding that the court possessed admiralty jurisdiction when a plaintiff alleged that a defendant was negligent prior to placing a vessel in the water, and the incident had a potentially disruptive impact on maritime commerce).

Plaintiffs brought the instant suit against Defendant after a boat collision with him on Lake Wylie. (ECF No. 1.) Plaintiffs specifically allege that Defendant caused the collision and was negligent in the operation of his vessel. (*Id.* at 3-7.) Given that the boating accident occurred on Lake Wylie, the alleged tort must have occurred on navigable waters. *See Jerome B. Grubart*, 513 U.S. at 534 (holding that the location test was satisfied when a company allegedly caused a flood involving the Chicago River). *See also Hartman v. United States*, 522 F. Supp. 114, 116-117 (D.S.C. 1981) ("This [c]ourt holds Lake Wylie is susceptible of being traversed by commercial craft between states and is therefore navigable for purposes of invoking admiralty jurisdiction."). Therefore, because the accident occurred on navigable waters, the location test is satisfied. *See also Oliver by Oliver*, 745 F.2d at 319-20. The accident between Plaintiffs and Defendant also has

4

a connection to maritime activity. *See id.* at 320 ("The negligent operation of the defendant's vessel bears a significant relationship to traditional maritime activities."); *Kelly v. United States*, 531 F.2d 1144, 1147 (2d Cir. 1976) ("[A]dmirality jurisdiction has been upheld in a variety of recent cases involving pleasure boat accidents.). *See also Ray*, 294 F. Supp. 3d at 481 ("[B]eing struck by the main sheet of a racing sailboat has a connection to maritime activity."); *Schumacher v. Cooper*, 850 F. Supp. 438, 447 (D.S.C. 1994) ("Personal injury negligence actions arising from a collision between a pleasure boat and a swimmer on a lake in South Carolina are within the admiralty jurisdiction of this court.") (citations omitted); *Hartman*, 522 F. Supp. at 119 ("This [c]ourt concludes that the collision here involved, between a vessel in navigation and an abandoned bridge piling, is just as much a traditional concern of admiralty . . . ."). *But see Souther v. Thompson*, 754 F.2d 151, 153 (4th Cir. 1985) ("Unlike *Foremost* and *Oliver*, the controversy in this case does not arise out of an alleged navigational error such as occurs when a pleasure craft collides with a swimmer, water skier, reef, or another vessel. In his complaint[,] K. Souther failed to make any factual allegations that the operator of the boat had violated a navigational rule."). Accordingly, the court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1333, and the court's admiralty jurisdiction is properly invoked. *See Sisson v. Ruby*, 497 U.S. 358, 364-65 (1990).

### III. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought . . . ." A change in venue is "[f]or the convenience of [the] parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). "A section 1404(a) transfer merely involves a discretionary change to another district where the action could have been brought." *Gower v. Lehman*, 799 F.2d 925, 927 (4th Cir. 1986). Therefore,

a district court's decision to transfer a case is only reversed for an abuse of discretion. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200-01 (4th Cir. 1993).

Federal courts must evaluate a motion to transfer on an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). "A motion to transfer under § 1404(a) . . . calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The party seeking a transfer under § 1404(a) bears the burden of demonstrating that a change in venue is proper. *See Del Zotto v. Universal Physician Servs., LLC*, 214 F. Supp. 3d 499, 501 (D.S.C. 2016) (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)). Even though a district court has discretion when deciding whether to transfer a case, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921-22 (4th Cir. 1984) (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1946)).

Generally, when deciding to transfer venue, a district court subject to review by the United States Court of Appeals for the Fourth Circuit,[1] at a minimum, must examine: "(1) the weight accorded to plaintiff's choice of venue; (2) witness and convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (citations omitted). In harmony with the Fourth Circuit's precedent, federal district courts have also evaluated the following discretionary factors in a transfer motion:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of the

---

[1] "Coherent and consistent adjudication requires respect for the principle of stare decisis and the basic rule that the decision of a federal circuit court of appeals left undisturbed by United States Supreme Court review is controlling on the lower courts within the circuit." *See Condon v. Haley*, 21 F. Supp. 3d 572, 587 (D.S.C. 2014).

judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness of having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554, 561-62 (M.D.N.C. 2015) (quoting *IHFC Props., LLC v. APA Mktg., Inc.*, 850 F. Supp. 2d 604, 622 (M.D.N.C. 2012)). On balance, these factors must be in favor of the moving party. *See Figgie Intern., Inc. v. Destileria Serralles, Inc.*, 925 F. Supp. 411, 413-14 (D.S.C. 1996) (quoting *Avant v. Travelers Ins. Co.*, 668 F. Supp. 509, 510 (D.S.C. 1987)). Ultimately, a transfer of venue must "promote the just and efficient" process of litigation. *Fairchild Semiconductor Corp. v. Nintendo Co., Ltd.*, 810 F. Supp. 173, 175 (D.S.C. 1992).

## IV. DISCUSSION

**A. Whether Venue Would Have Been Proper in the Western District of North Carolina**

As a threshold issue, the court must first decide whether venue would have been proper in the Western District of North Carolina. *See* 28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district or division where it *might have been brought* . . . .") (emphasis added). Whether a specific venue is appropriate is a procedural matter. *See Albemarle Corp. v. AstraZenca UK Ltd.*, 628 F.3d 643, 649 (4th Cir. 2010). Generally, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2).

In the instant case, the boating accident between Plaintiffs and Defendant occurred on Lake Wylie, which is located in North and South Carolina. (ECF No. 12 at 3; ECF No. 13-1 at 5.) *See also Hartman*, 522 F. Supp. at 116-17 ("Lake Wylie is an interstate body of water, comprising a portion of the border between the two Carolinas."). While North and South Carolina share Lake

7

Wylie, the accident occurred on North Carolina's side of the Lake Wylie. (*See* ECF No. 13-1 at 5.) Thus, the events giving rise to the claim occurred in North Carolina, and venue could have been permissible in North Carolina. *See* 28 U.S.C. §§ 1391(b)(2), 1404(a). Lastly, Lake Wylie is located southwest of Charlotte, North Carolina. *See Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 535 (4th Cir. 2007) ("R. Wayne Galloway, in anticipation of retirement, planned to build his 'dream home' on a lot . . . on the North Carolina side of Lake Wylie, southwest of Charlotte, North Carolina."). The United States District Court for the Western District of North Carolina has offices in Asheville, Charlotte, and Statesville. *Court Locations*, U.S. DIST. COURT W. DIST. OF N.C., http://www.ncwd.uscourts.gov/court-info/court-locations (last visited Oct. 17, 2018). Therefore, because the accident giving rise to the claim occurred on the North Carolina side of Lake Wylie, venue would have been proper in the Western District of North Carolina and this case could have been brought in that jurisdiction.

**B. The Court's Consideration of the Motion to Change Venue**

Under Fourth Circuit precedent, the court must first examine: "(1) the weight accorded to plaintiff's choice of venue; (2) witness and convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers*, 791 F.3d at 444. "[T]here is no such . . . thing as a specific, one-size-fits-all standard for the [c]ourt to employ when adjudicating § 1404(a) motions . . . ." *Del Zotto*, 214 F. Supp. 3d at 502. As such, the court must consider other factors such as the cost of obtaining the presence of witnesses, litigation expenses, access to evidence, calendar congestion, where the events took place, and other interests of justice. *See Broadus*, 101 F. Supp. 3d at 561-62; *In re TLC Marine Servs., Inc.*, 900 F. Supp. 54, 56 (E.D. Tex. 1995) (citing *Gundle Lining Const. v. Fireman's Fund Ins.*, 844 F. Supp. 1163, 1165 (S.D. Tex. 1994)).

First, the court must weight Plaintiffs' preferred venue. *Trs. of the Plumbers*, 791 F.3d at 444. Interestingly, even though they live in Charlotte, North Carolina (ECF No. 13-1 at 7-8), Plaintiffs have chosen South Carolina as their preferred venue. (ECF No. 12 at 4.) Plaintiffs' preferred venue naturally weighs against transfer, but it is not dispositive when determining if transfer is appropriate. *Del Zotto*, 214 F. Supp. 3d at 502. Additionally, the court gives Plaintiffs' preferred venue little weight because, as detailed below, the operative facts have little connection to South Carolina. *See Foster v. Marriott Resort Hosp. Corp.*, Civil No. 17–12901 (NLH/AMD), 2018 WL 3360763, at *2 (D.N.J. July 10, 2018) ("This court has frequently disregarded a plaintiff's preferred venue when New Jersey has little connection to the operative facts."); *Wm. H. McGee & Co., Inc. v. United Arab Shipping Co.*, 6 F. Supp. 2d 283, 290 (D.N.J. 1997) (finding that a plaintiff's preferred venue could be overridden when the operative facts occurred in a different state). *See also Gerber v. Canfield*, 315 F. Supp. 1175, 1178 (D.S.C. 1970) ("[T]he scene of the events upon which the action is based could be important.").

Second, in regard to witnesses, Plaintiffs and Defendant disagree as to whom this factor favors. (*Compare* ECF No. 12 at 3, *with* ECF No. 13 at 3.) Plaintiffs submit that "most material witnesses are the drivers and passengers of the respective vessels," and "subpoenas will be available to procure the participation of witnesses . . . ." (ECF No. 12 at 3.) Defendant, on the other hand, points out that Plaintiffs are residents of Charlotte, North Carolina, investigating officers are employed by governmental entities in North Carolina, and certain witnesses do not object to the matter being transferred to North Carolina. (ECF No. 13 at 2-3.) In the instant case, Plaintiffs reside in Charlotte, North Carolina (ECF No. 13-1 at 7-8), while Defendant lives in Lake Wylie, South Carolina (ECF No. 13-1 at 3). However, given that Lake Wylie is shared between the two Carolinas, Defendant is presumably close to North Carolina. (ECF No. 13-1 at 3, 5.) The

investigating officers are employed by government agencies in North Carolina. (ECF No. 13 at 2; ECF No. 13-1.) As agreed between Plaintiffs and Defendant, the treating physicians of the accident are located within and practice medicine in North Carolina. (ECF No. 12 at 3; ECF No. 13 at 3.) One witness lives in Texas and is the only witness, at least brought to the court's attention, residing outside of North and South Carolina. (ECF No. 12-1 at 1.) On balance, this factor weighs heavily in favor of transfer because the majority of the witnesses, including Plaintiffs, the investigating officers, and the treating physicians, are located in North Carolina. (ECF Nos. 12, 13, 13-1.)

Third, in regard to the convenience of the parties, this factor also weighs in favor of a transfer. *See Trs. of the Plumbers*, 791 F.3d at 444. Plaintiffs reside in Charlotte, North Carolina (ECF No. 13-1 at 7-8), which is the home to the Western District of North Carolina. *Court Locations*, U.S. DIST. COURT W. DIST. OF N.C., http://www.ncwd.uscourts.gov/court-info/court-locations (last visited Oct. 17, 2018). As noted above, even though Defendant lives in South Carolina, he is likely close to the Western District of North Carolina. (ECF No. 13-1 at 3, 5.)

Fourth, but not finally, the interest of justice is in favor of transferring this case to North Carolina. *See Trs. of the Plumbers*, 791 F.3d at 444. Defendant has alleged that North Carolina authorities seized various pieces of evidence relating to the accident. (ECF No. 13 at 2-3.) If this is truly the case, the interest of justice favors both parties having ready access to the evidence and witnesses handling the evidence. *In re TLC Marine Servs.*, 900 F. Supp. at 56. Additionally, the accident occurred on the North Carolina side of Lake Wylie, not on the South Carolina side. (ECF No. 13-1 at 5.) Justice demands that North Carolina handle this dispute, especially given that its law enforcement investigated this matter. *See Republican Party of N.C. v. Martin*, 682 F. Supp. 934, 836-37 (M.D.N.C. 1988) (holding that venue was more appropriate where the state legislators of North Carolina actually passed a law and where the law was actually enforced by state officials).

As such, the interest of justice is in favor of transferring this matter to the Western District of North Carolina.

In addition to the aforementioned factors, there are additional considerations motivating the court. The court has the discretion to consider where the events took place, the governing law, and litigation costs. *See In re TLC Marine Servs.*, 900 F. Supp. at 56; *Broadus*, 101 F. Supp. 3d at 561-62. As already considered by the court, the events took place on the North Carolina side of Lake Wylie. (ECF No. 13-1 at 5.) Since this accident occurred in North Carolina, evidence suggests that Charlotte, North Carolina, is the nearest city to the events at issue. (*Id.* at 1.) Plaintiffs and Defendant are in dispute in regard to the governing law, so this factor is inconsequential and unhelpful to the court. (*Compare* ECF No. 1 at 1, *with* ECF No. 13 at 3.) In regard to litigation costs, the evidence, parties, and majority of witnesses, with the exception of one witness, are closest to Charlotte, North Carolina, which means that travel expenses would be reduced if the case was heard there. (ECF Nos. 12, 13, 13-1.) Also pertaining to litigation costs, the attorneys in this matter are both located in North Carolina, so a venue in North Carolina is also more appropriate. (ECF No. 10 at 5; ECF No. 12 at 4.) Therefore, the location of the events and litigation costs favor North Carolina, while the governing law is inconsequential. *See In re TLC Marine Servs.*, 900 F. Supp. at 56; *Broadus*, 101 F. Supp. 3d at 561-62.

A federal court is not bound by a mechanical or rigid framework when determining whether to transfer venue to another judicial district. *See Del Zotto*, 214 F. Supp. 3d at 502. Instead, the court is tasked with conducting a fact-intensive analysis that is within the court's discretion. *See Gower*, 799 F.2d at 927. Based upon the foregoing analysis, the court gives little weight to Plaintiffs' preferred venue and finds that convenience, the location of the witnesses and evidence, and the interest of justice favor transferring this matter to the Western District of North Carolina.

Additionally, while the governing law is essentially immaterial to the court's analysis, the location of the events and litigation costs also favor transferring this case to the Western District of North Carolina. The court is confident that a change in venue will ensure a just adjudication for both parties and promote an efficient adjudication. *See Fairchild Semiconductor*, 810 F. Supp. at 175. This is a case in which Defendant has clearly carried his burden when seeking a change in venue. *See Figgie Intern., Inc.*, 925 F. Supp. at 413-14. Thus, based upon the balancing of all of the relevant factors and the aforementioned considerations, the court concludes that this case warrants a change in venue under 28 U.S.C. § 1404(a).

## V. CONCLUSION

After a thorough review of Defendant's Motion (ECF No. 10), Plaintiffs' Response (ECF No. 12), and Defendant's Memorandum (ECF No. 13), the court **GRANTS** Defendant's Motion to Change Venue (ECF No. 10). It is hereby **ORDERED** that this matter be **TRANSFERRED** to the United States District Court for the Western District of North Carolina.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

October 19, 2018
Columbia, South Carolina